Case No. 22-5898 Jerry Lawler v. Hardeman County, TN et al. Argument is not to exceed 15 minutes per side. Mr. Tilley, you may proceed for the appellants. May it please the Court, Nathan Tilley on behalf of appellants. Your Honors, with the Court's permission, I reserve three minutes of rebuttal. Time and again, this Court has held that in order to show a constitutional deprivation in an inmate suicide case, the plaintiff must show proof that the decedent displayed a strong likelihood of suicide before even delving into whether the defendant's actions constituted a constitutional violation. And in doing so, this Court has repeatedly held that a showing that the decedent displayed a possibility of suicide is not enough. A showing that the decedent displayed even a likelihood of suicide is not enough. Instead, the proof must be that the decedent showed a strong likelihood of suicide. And it's not surprising that the Court has held this way because as this Court has recognized also time and again, suicide is difficult to predict. It often happens without warning. And therefore, this Court has set a high bar on plaintiffs to show a constitutional deprivation in a suicide case. Well, why wasn't there a strong likelihood of suicide, even if that is the test, when Mr. Lawther was actually engaged in the suicide? So when Gonzalez is walking by and he has a towel over his head and he's in this incredibly unusual circumstance where he's standing on a bench at the side of the wall, Couldn't that be enough to create the strong likelihood of suicide that's necessary? No, Your Honor, it would not be for a number of reasons. First, this Court has never found that a strong likelihood of suicide existed without one of two things present. Either there is a very recent past suicide attempt before the successful act or a statement from the decedent that he is suicidal or threatening self-harm. But you would agree that that's not required. What if he actually saw an inmate with a blanket noose and it was completely obvious? Sure. Okay, so why isn't this like that? That's fair, Judge. If a correctional officer saw someone in the process of hanging themselves, they saw a noose around their neck and they were hanging, that would be one thing. That's not what the proof in this case is, though. When Gonzalez walked by that cell, and it's important to understand that the decedent was in the far left-hand corner of the cell. On the cell with the closed door is a very thin window. It's a very thin, tall window. When Gonzalez looked in, he wasn't looking directly at the decedent. It was at a very sharp, direct angle to the left so that he was not able to see the entirety of the decedent's body. He wasn't able to see his face. He wasn't able to see his neck. But what he thought he saw was the decedent standing in the corner. And there's a cinder block bench in that cell. And the testimony is, and it's undisputed, Gonzalez testified that he had seen other detainees stand in the corner on that cinder block bench. So that when he looked in there, what he saw was an inmate standing in the corner of the cell on a bench. He did not see Mr. Lawler hanging himself. Now, it's also important to keep in mind that when he walked by, what did Gonzalez know about Mr. Lawler? He didn't know anything about a mental health history of Mr. Lawler. He didn't know anything about him having been diagnosed with bipolar disorder. He didn't know about any past suicide attempts whatsoever. In fact, his testimony was he knew Mr. Lawler to be a happy inmate that he had joked around with in the past. So when he's just randomly taking out the trash that day and he walks by that cell and he looks in at a sharp angle and he doesn't see the entirety of Mr. Lawler in the corner, the furthest thing from his mind would be that this inmate is committing suicide. That's not within his thought process. Why would that not be within his thought process? I mean, I'm not sure. It seems to me that there aren't too many reasons an inmate would want to stand on a bench in a cell. Well, Mr. Gonzalez testified, the undisputed proof in the case is that inmates stood on that bench in the cell often. That in that cell, inmates would often hide in that corner. And Gonzalez had seen inmates hide in that corner. Why would they? Was there any more to this testimony? I agree with Judge Gibbons that it just strikes me as quite strange. What were they what were they attempting to accomplish by standing in the corner? Well, the location. Sure. That's a good question, Judge. The location of that cell is is it's the first cell you come to if you come out of the Sally Port. So there's quite a bit of traffic in that area of the jail. It's probably the most heavily trafficked area of the jail because it's where people come in to bring in new inmates. And so the reason that inmates may hide in that corner was just to hide from other people. And and but in and of itself become a reason to arouse concern on the part of. A jailer. I don't think that's the test. I don't think the test is whether it was the test. Sure. I'm asking you factually. I'm not saying that's the test. I'm just saying factually, isn't that enough to arouse concern? I don't think so. I not not not especially with Gonzalez's testifying that he'd seen other inmates in the corner before. Well, but if an inmate is trying not to be as visible as he might be. Isn't it somewhat likely that he's up to something he ought not be doing? I don't think so, Judge. I think it's just as likely that he's just trying to hide. As Gonzalez justified something. Hi. What are you hiding? No, I think, Judge. Judge, they're trying to hide from other people walking by and talking to them. But that's not an indication that there's a strong likelihood of suicide. And that's the question is if an inmate is that we may be talking about the ultimate test. But, you know, little facts matter and go into the application of the test. I'm simply asking you about the facts. Sure. Sure. And I think the answer is that the inmate could have just wanted privacy from other people walking by. And Gonzalez had seen inmates do that in the past. And so that when he saw Mr. Lawler standing in the corner of the cell and again, he didn't even get a full picture of him. He didn't get a full view of Mr. Lawler. That didn't give rise to there's something wrong with him. Or we need I need to or I think that there's a strong likelihood of suicide. Why did you think that his actions after he came back? In some respects, they were good because he was investigating. But do you think they somewhat undercut your claim that there wasn't a concern? Because when he came back and he saw him in the exact same position, he didn't say, oh, he's just hiding. So he actually thought there may be a problem. And I wonder if that in some respects actually undermines your position that it wasn't a problem to begin with, that when he returned, he finally kind of drew some understanding that maybe I should investigate more. Well, I don't think that that this the fact that when he returned, he decided to knock on the door again necessarily means that when he first walked by, he should have understood that Mr. Lawler was in the process of committing suicide or that there was a strong likelihood of suicide. I think that the second time when he returned and and he looks in and it didn't appear to him that there was any other movement from Mr. Lawler. And when he knocked on the door again and Mr. Lawler didn't respond to him again, that at that point in time, he said, I need to check this out. I need to check this out. But it wasn't until he walked through that door that he saw a shoelace around Mr. Lawler's neck that he realized that he realized that he was in the process of committing suicide. At that point in time, it became a strong likelihood that there would be a suicide because he saw that. But before then, there were no there was nothing that Gonzalez would have known to make him realize there's a strong likelihood of suicide. And and, you know, we cited the Nalani case in that case. The correctional the facts in that case show that this the this the scene had come in. He had a mental health issue. He had been placed in a mental health area in the jail and he did not move for hours. He laid down in his bed and he didn't move for hours in the court, dismissed all the defendants, except for one, because the court said there wouldn't have been a reason for them to know anything was wrong with him. He was laying down. They thought he was asleep. The one they allowed to stay in. And he had violated a policy that said you must be checking to make sure they're awake at 7 a.m. when you come in on your shift, because this is the mental health unit of the facility. And there were these other facts that led would have led someone to believe this person could be suicidal. Well, in this case, seeing an inmate standing, standing in the corner of a cell who has never exhibit any kind of suicidal ideation, threats of self-harm, any inclination whatsoever that he is suicidal. That in and of itself does not give rise to a strong likelihood of suicide. And even if this court were to find it could. There's no case law that says it would. There's no case that would make that would put Gonzalez or Wiggins, for that matter, put the defendants on notice. Not entering that cell would violate Mr. Lawler's constitutional rights. And without that fair warning, they're entitled to qualified immunity under the second prong. Do you think it's some our laws kind of difficult for me to follow? I would say this is a question for both sides. I do think we don't have to get into the Bronner debate and its effect on our current standards because the suicide in this case happened in 2018. And at that time, the old standards were still applicable. And you have to judge what was the clearly established law at the time of the action. So it would be at the time of the suicide. Since Bronner expanded Kingsley after that. I think the only thing that was clearly established at the time was the older, more difficult test. At the same time, it seems to me you've argued that the strong likelihood of suicide is in the objective prong. But I view that as our gloss on the subjective prong on when an officer could have knowingly, subjectively believed that there was a substantial risk of suicide. We say that when it's obvious that there was a strong likelihood that the inmate would attempt suicide. We say that's essentially what is the genuine issue of material facts standard. And we say if that is true, if it is obvious, then a jury could find that he that the inmate was subjectively aware. But if it's the subjective test, I don't think you need to find a case directly on point. I think it just is a fact question. Did he draw that he subjectively could a jury find that Gonzalez subjectively understood that there was a substantial risk of suicide? And if a jury could, I don't think we need a case on point because then he drew the he would have subjectively known. Your honor, I have a couple of responses to that 1st, in the Troutman decision, this court treated the the the that is part of the objective prong. And I agree, we said it. I completely agree with you. I think it's both sides. There's cases on both sides. You're right. You're right. You're right. But I think it's both. I think I think you have to show for in a suicide case for the objective prong to be met. You have to show that there was a strong likelihood of suicide. Then under the subjective prong, you have to show that knowing what the defendant knew about this strong. Would the defendant have known there was a strong likelihood of suicide? OK, so it's both. I think you have to first show there was under the objective. But then under the subjective, would the defendant have known there was a strong likelihood of suicide? But the other thing I would I disagree with what you said about qualified immunity under prong, too. And I would point the court of the Paris case, Paris versus Oakland County, because in that case, the court found that both prongs were met. That there was an issue of fact, but nonetheless gave qualified immunity to the case manager in that case because the court said that there wasn't a case on point. The test is not whether it's an objective or subjective prong for qualified immunity analysis. The test is, is there a case that would give the defendants fair warning that their actions or failure to act would violate constitutional rights? And so the questions I've been asked about Mr. Gonzalez, is there a case on point that would have been would have given Mr. Gonzalez warning that if he doesn't walk into a cell in which he partly sees an inmate standing in the corner? Who he has no reason to believe has had any suicidal ideation, any suicidal threats ever. Is what is there a case on point that would give him fair notice that failing to walk into that cell would violate the detainees constitutional rights? And I think the clear answer to that is there's not a case that would that would have given Mr. Gonzalez fair warning. And I think that there is a Pandora's box that would be opened if this court said that that would be a constitutional violation. Because then anytime an inmate chooses to hide in a corner, you are placing a duty on officers to enter that cell. That has never been the law and and would place an undue burden on correctional officers. Inmates hide in the corner of the cells all the time. That doesn't mean they're committing suicide. And that's all that Gonzalez saw at that moment in time. And there's not a case that would have given him fair warning that failing to walk in at that time would have violated Mr. Lawler's constitutional rights. And your honor, I think that it's telling that plaintiff's counsel has thus far been able to fail to show any case that would even get us close to that. And again, I think that Perez would suggest that that qualified immunity would be due in this kind of situation. I see I'm out of time. Mr. Bay. Thank you. Good afternoon. May it please the court. My name is Matt May, and along with Attorney Jeff Rosenblum, we represent Jerry Lawler as the father and personal representative of the state of Brian Christopher Lawler. We request that the court affirm the district court's ruling denying summary judgment for the following reasons. First, the police events of this quarters without jurisdiction for this appeal, because this appeal does not just turn on a purely legal issue. On the ruling denying summary judgment, the court repeatedly weighed the evidence and found material disputes of factual evidence. Appellants throughout their brief refused to concede the facts. Your honors are aware Johnson versus Jones Supreme Court held that whether or not the pretrial record sets forth the genuine issue of fact for trial is not a final order that this court can hear on appeal. This court has consistently held that Johnson creates a jurisdictional bar to the case being appealed as a final decision. Can I ask you a legal question then? What is your response to my suggestion that the whole Bronner debate, that all took place after the events at issue in this case? And so the expansion of the 14th Amendment claim for pretrial detainees, I shouldn't say the expansion, I guess the reduced standard that now applies was not clearly established at the time. And so we should only look to the traditional 8th Amendment cases. What's wrong with that reasoning? Well, that the Bronner standard applies to the burden and that somewhat I disagree with opposing counsel that that is taken into what a reasonable officer would have known at the time of their actions. This court has long held that what was clearly established at the time is what we look at for the right on whether they're in the right is that Mr. Lawler had a right to be screened for suicidal tendencies and a right to have steps taken that would have prevented his suicide. That is separate and apart from the Bronner standard. Well, I do think it matters. I was just going to say, but but Bronner tells us that we evaluate the constitutional right. We treat it as a 14th Amendment claim, which has a different standard than an 8th Amendment claim. Before Bronner, we would have treated it as an 8th Amendment claim, which is a harder case for a plaintiff to make. Right. I mean, maybe not an 8th Amendment claim, but that's equivalent to an 8th Amendment claim. So it seems to me that we because this case took place, the events of this case took place before Bronner, we would still apply the equivalent of the 8th Amendment standard. I think that in relying on Kingsley and this court has now held that that would apply would be the reckless disregard standard of Bronner repeatedly. As recent as June 29th, this court in Mercer said that the subjective requirement of a pretrial detainee is not applied now in this regimen following Bronner in the 14th Amendment. I disagree with opposing counsel that Troutman held that the subjective component, the strong likelihood is a part of the objective component. In fact, Troutman said, and I quote, for prison suicide cases, the subjective standard requires that it was obvious that there was a strong likelihood that an inmate would attempt suicide. Troutman. I agree with you. It's it's in the subjective component because it's just the way it's circumstantial evidence that a jury could find that the defendant harbored the knowledge of the risk. It's still subjective, but it's just the way that you can get to a jury through circumstantial evidence. If the risk was obvious that everybody would have recognized it, then a reasonable juror could find that the defendant himself knew of the risk. But I do think that the change might matter in this case. And the reason I say that pre Bronner, the defendant had to there had to be evidence that the defendant subjectively knew of the facts that created the risk and subjectively drew the conclusion that the risk existed. Post Bronner, I think you just have to recklessly disregard the risk. And I have two reasons why I think the district court might have committed legal error after each section of the district court's brief when discussing the three defendants. The court said there is a genuine issue as there is a genuine dispute as to whether each defendant recklessly disregarded an excessive risk that the decedent would commit suicide. That sounds like the Bronner standard to me. So it sounds like the judge may have had a misapprehension of law. And then if we ask whether, for instance, Gonzalez actually had subjective knowledge of the risk in the fact section of the of the court's opinion, the court actually says Gonzalez thus did not believe that decedent was suffering any medical emergency. So it seems like the district court actually found a fact under the traditional standard that dooms your claim against Gonzalez because the court said he did not believe that while there was suffering a medical emergency. So I guess the takeaway from these two things is, do you think you could meet the higher standard with respect to Gonzalez, even though the district court itself and its opinion suggests that Gonzalez was not believed that while there was not suffering a medical emergency? The answer is yes, judge. And first of all, to your one point about the legal standard, you will recall that in the district court's order, the court said the court finds that need not answer the question because even under the more rigorous pre Bronner standard, plaintiff has shown genuine dispute of material fact as I agree with that. And what do you make of the reckless disregard? What I make is that Gonzalez, not only we made a big point about your honors that about him standing on a bench, he's also standing on a bench with a towel over his head. Gonzalez admitted that he had a duty. His supervisors, they had an obligation when he went by to do a check. He was not just doing a friendly check. He had a duty to check on this inmate who was in an isolation cell that was removed from where he could be observed as he was supposed to be by by defendant Wiggins. Gonzalez asked him to respond. He never responded. What's telling and that I think there is a factual dispute that we can get that a jury should hear this case is that he leaves. He goes to take the garbage out. Time goes by. It's a disputed fact about how long that is as the time goes by. Why does he go back and check on him again? It begs the question because he knew something was not right. He knew something was not right the 1st time. That's how these 2 things are linked together. Then when he asked for for Mr. Lawler to respond, he doesn't respond and he reaches out to his supervisor who then makes an assumption and says he's faking it. What did both of these officers and this is circumstantial and and respectfully, the 6th Circus held that circumstantial evidence of risk factors and of evidence can be pursuant to farmer enough to show that there is a strong likelihood of suicide or an attempt. What did they know? Why was he faking it? If he was being unresponsive while standing on a jail cell? Also, a disputed fact that's in the court's opinion about Gonzalez is that he did not see his his shoestrings at that time. He does not recall actually seeing them. Well, we know that that's what he ultimately used to tie himself to the literature to commit suicide. So time goes by. He deliberately makes a decision not to make sure that Mr. Lawler, which he knew something was unusual. It is not, as your honors have pointed out, is not typical that an inmate should be standing on a bench and especially with a towel over their face. So that that might show recklessness, but do you think it actually shows that a jury could find the higher standard that he actually when he went out to take the trash out the first time he actually had reached the conclusion that he was committing suicide and just ignored it and left? Exactly. Isn't that the standard you would have to meet under under the Eighth Amendment? Well, I believe that the standard should be the reckless. But in light of that, the fact that he was actively committing suicide and he never actually got him to respond again. Mr. Gonzalez, his subsequent testimony is that he didn't think it was a big deal because not as opposing counsel said that people stood on that bench. He said that they would commonly put a towel over their head coming out of a shower. It's undisputed that Mr. Lawler wasn't coming out of the shower. He was standing in a corner trying to hide, not trying to respond. I think there is a strong likelihood that he was doing something and not acting mentally well. But if he if the standard is the Eighth Amendment standard and we have to a jury would have to be able to find that Gonzalez formed the subjective intent the first time, like knew this guy's committing suicide and then went his own way. Why would he go back? Why would he go back at that point if you you're like, oh, this guy's committing suicide? Why would you go back and check on him like you have formed that intent and you've decided to walk away? He had a change of heart, I guess. You know, judge, I don't I think that that actually answers the question, though, in the affirmative that he went back because he knew that something was going on because the bigger question is when he did not respond and it's undisputed that he had an obligation to make sure that the detainee would respond. Who's in solitary confinement? Why backing up? He checks on him. What is the purpose of checking on a detainee who is in an isolation cell except to make sure that they are mentally and physically well? He never gets a response. It's very suspicious that he has a towel over his head. So then he deliberately makes a decision to leave. And as far as the 8th Amendment standard and the pre Bronner standard that does, Troutman was decided in 2020 by this court and there was debate or not debate there. Kingsley did not come up in that case yet. However, even in that knowledge of a strong likelihood, the court said, was a question of fact subject to demonstration in usual ways, including inference from circumstantial evidence. And I think that your honor, that this in this case, Gonzalez circumstantial evidence is he has a man who's not moving, who's not responding with a towel around his neck, doesn't know where his shoelaces are in a place that he can't see him. Then comes back and says he's not responding, or it's actually disputed in the record when he exactly says he's not responding to defendant Wiggins, who defendant Wiggins has been hearing him scream, yell, act out the entire day. And then suddenly stopped making noise and defendant Wiggins says he's probably faking it to me, coupled with all that circumstantial evidence tells me that the substantive the subjective if this court is inclined to follow the pre Bronner was subjective. A reasonable jury conclusion was that he knew that he was not well. Do you think, do you think we have to. So getting back to I know I asked a long question earlier, but I was curious about the district court statement of facts that Gonzalez bus did not believe decedent was suffering any medical emergency. Now, this is the first time this strikes me as a statement of fact about Gonzalez is subjective understanding. It's on page 4690 of the district court's opinion. If you're looking for it. It's, I mean, I think your response is either. Either you don't have to prove subjective intent, or the district court just misinterpreted the facts, and we have to take the facts in the light most favorable to the plaintiff and the district court was wrong when it made this statement. But it did. It does seem to me that the district court is saying here that Gonzalez, at the time, did not subjectively understand that there was a suicide risk. Do you see the statement you see that and I think that that is the circumstantial evidence to answer your question that I go back to is, why was he doing the check? Why did he not get the answer and the response? And why did he come back and do the check afterwards? And I do think that 1, as we've addressed thoroughly in our brief that pre Bronner and in light of very recent cases that are coming that have come out from this court have said that as appellant wishes trotsy does not apply that the pre Bronner standard under Kingsley should be applied. But also, I do think that that the judge is saying that he's suffering any medical emergency. I think that that, with all due respects to the district court, I think that they're talking about a physical medical emergency at that time. And maybe there is some type of mistake as far as that, because it does not necessarily go along with what he later finds as far as the action. Well, I mean, all that he was actively taking at that time medical emergency and what he was actively doing at that time. I think circumstantially are enough. Yeah, I mean, you could interpret the district court opinion to be saying that all that's necessary is reckless disregard because that's what he says later. But what do you make of? I was looking at your statement of facts. 1 last point on this, because I thought this could be where the district court got this in your proposed statement of facts where the defendant talks about this point in time. The defendant says at this time, Gonzalez possessed no information indicating that Brian Lawler had hung himself and your response is disputed. But then you go on to say, while he may while he might not have realized Mr. Lawler was hanging, he had information necessary to make that determination. The first half of that sentence in your proposed statement is, in some respects, a reaffirmation that it's not disputed that Gonzalez did not realize that Mr. Lawler was hanging at this time. I think that I think that what we're referring to was that he did not know when he came up to the room that he was hanging at that time. But when he has the towel over his head and all this, I'm not going to repeat myself again on that. But when you take all that hand in hand, circumstantially and again, I do think that coming back and checking on him was not just necessarily some goodwill gesture. I think that he goes, this guy's not responding and I've made a deliberate decision and then makes another deliberate decision to ask and then to wait. I think some three to four minutes go by before anybody actually jumps on it and realizes, oh, no, we're definitely being objectively unreasonable and reckless in regard to what is happening in the situation. And what he found Mr. Lawler in. Can I ask, I'm just switching gears real quick because you only have a little bit of time left. Can you respond briefly to your friend on the other side's comment that there needs to be a case with some of their facts? Because I don't think that case would exist, but I'm curious if there is a case, number one. And number two, if you actually think that's the test. One, I do not think that's the test. I think the test has been time and time again in suicide cases that we do not have to show that that is the issue, that it's that they need to be screened for suicidal tendencies and that there is a right to have steps taken that would prevent suicide. That is the known risk. He knew when he went there. Gonzales, Wiggins knew, Futrell knew. They all knew that these inmate detainees had a constitutional right. I disagree that there has to be a case. And and I appreciate your time today. Mr. Tilley. Thank you, Your Honor. A couple of a couple of points. The there is no proof in the record that Gonzales saw. The decedent hanging until he entered that cell. There's no proof that he saw him hanging until he entered that cell. There's no proof that he suspected that he was hanging until he entered that cell. And in a couple of points on that, because I know Judge Murphy and Judge Larson, you'll have a few questions. One, it is undisputed that Gonzales had seen other inmates stand in that very corner. That is that plaintiffs did not dispute that fact. That is our statement. This idea that he was going to check on on Mr. Waller, he was taking out the trash and the cell was just on his way to taking out the trash. So and he and he testified that he had a relationship with Mr. Waller. Mr. Waller had been in the jail for three weeks. And so they would kind of joke around with each other. And so it wasn't a formal check. He wasn't doing a formal check. He was just banging on the door and and saying hello to him. And then when he came, he takes the trash out. When he came back, coming back, he would have had to walk right by his cell again. It wasn't like he went out of his way to go back by Mr. Waller's cell. He was just coming back into the jail. And so when he was coming back into the jail, he just knocked on the door again to talk to him. It wasn't like he was doing a jury could find at that time. The second time, do you think a jury could find that he had the actual knowledge of a substantial risk because he was in the same spot? Not until he walks in the door. Would he have knowledge of a substantial risk of suicide? Now, yeah, I do. Why would Wiggins why would Wiggins say he was probably faking? What was she referring to? I mean, I know you have to take that as in the line most favorable to the plaintiff. So just accept it. Well, I understood. But but I think there is some confusion on that. The only proof in the record is that that comment was made there after the first passed by, not the second. There's no proof in the record that that happened after the second knock that that comes from one witness. It was another inmate in the jail and he testified. It happened after the first knock and then later said he couldn't remember when it happened. No one has ever said that that happened after the second knock. And so so there is confusion on when that occurred. But it was the first, not the second. How does that how does that help you? I don't think so. I don't think so. Because because at the time they don't know anything else. All they know is he's standing. Doesn't it suggest there's an inference of what's going on? I mean, OK. Yeah. Yeah. What is he thinking? Yeah. What I think that's that's purely speculation. But there's again the question. The question is under under the pre Bonner or the post Bronner standard. The question is, knowing what the defendants knew, would they have known there was a strong likelihood of suicide? A strong likelihood of suicide. And at that time, what even under plaintiff's versions of events? There was an inmate standing, not lying down, standing in the corner of a cell in a corner that Mr. And he didn't respond to a knock on the door. There's and he didn't even get a full view of the inmate standing in the corner of the cell. And under the under qualified immunity. And your honor, Ashcroft, the Supreme Court has said existing case law must put the answer. If you have you need to be mindful of your time and bring your answer to a conclusion. Yes, your honor. Yes, sir. I'll just end with this existing case law must must put the precise question beyond that debate. That would be under Ashcroft. And we would suggest that is nowhere close to the case here. Thank you. Thank you, your honor. We appreciate the argument both of you have given and we'll consider the case carefully.